# EXHIBIT A

## NYS Budget Bill S2506-C, Part NN

# STATE OF NEW YORK

S. 2506--C                                                    A. 3006--C

# SENATE - ASSEMBLY

January 20, 2021

_____

IN  SENATE -- A BUDGET BILL, submitted by the Governor pursuant to arti-
cle seven of the Constitution -- read twice and ordered  printed,  and
when  printed to be committed to the Committee on Finance -- committee
discharged, bill amended, ordered reprinted as amended and recommitted
to said committee  --  committee  discharged,  bill  amended,  ordered
reprinted  as  amended  and recommitted to said committee -- committee
discharged, bill amended, ordered reprinted as amended and recommitted
to said committee

IN ASSEMBLY -- A BUDGET BILL, submitted  by  the  Governor  pursuant  to
article  seven  of  the Constitution -- read once and referred to the
Committee on Ways and Means --  committee  discharged,  bill  amended,
ordered  reprinted  as  amended  and recommitted to said committee --
again reported from said committee with amendments, ordered  reprinted
as  amended  and  recommitted to said committee -- again reported from
said committee with  amendments,  ordered  reprinted  as  amended  and
recommitted to said committee

AN  ACT  to amend the education law, in relation to school contracts for
excellence; to amend  the  education  law,  in  relation  to  pandemic
adjustment  payment reduction; to amend the education law, in relation
to aidable  transportation  expense;  relating  to  funding  from  the
elementary  and secondary school emergency relief fund allocated by the
American  rescue  plan  act  of  2021;  to amend the education law, in
relation to foundation aid; to amend the education law, in relation to
the statewide universal full-day pre-kindergarten program; legalizing,
validating, ratifying and confirming certain contracts and projects by
the  Huntington  union  free  school  district,  the  Liverpool central
school  district,  and the Marlboro central school district; providing
that the commissioner of education shall  not  recover  any  penalties
from  the Huntington union free school district, the Liverpool central
school district, and the Marlboro central school district; legalizing,
validating, ratifying and confirming certain transportation  contracts
by  the Cold Spring Harbor central school district; to amend the educa-
tion  law,  in relation to certain moneys apportioned in the 2021-2022
school year; to amend the education law, in relation to  the  prepara-
tion  of  estimated data for projections of apportionments; in relation
to approved private schools serving certain  students  with  disabili-

EXPLANATION--Matter in _**italics**_ (underscored) is new; matter in brackets
[--] is old law to be omitted.

LBD12572-05-1

ties, special act school districts and approved preschool special
class and special class in an integrated setting programs experiencing
enrollment decreases as a result of the state disaster emergency
declared pursuant to Executive Order 202 of 2020; to amend the educa-
tion law, in relation to authorizing the board of education of a
special act school district to establish a fiscal stabilization
reserve fund; to amend the education law, in relation to certain
tuition methodology; to amend the education law, in relation to char-
ter school aid; to amend part B of chapter 57 of the laws of 2008
amending the education law relating to the universal prekindergarten
program, in relation to the effectiveness thereof; to amend chapter
507 of the laws of 1974, relating to providing for the apportionment
of state monies to certain nonpublic schools, to reimburse them for
their expenses in complying with certain state requirements for the
administration of state testing and evaluation programs and for
participation in state programs for the reporting of basic educational
data, in relation to the calculation of nonpublic schools' eligibility
to receive aid; to amend chapter 756 of the laws of 1992, relating to
funding a program for work force education conducted by the consortium
for worker education in New York city, in relation to reimbursement
for the 2021-2022 school year; to amend chapter 756 of the laws of
1992, relating to funding a program for work force education conducted
by the consortium for worker education in New York city, in relation
to withholding a portion of employment preparation education aid and
in relation to the effectiveness thereof; to amend the education law,
in relation to funds for certain employment preparation education
programs; to amend chapter 147 of the laws of 2001, amending the
education law relating to conditional appointment of school district,
charter school or BOCES employees, in relation to the effectiveness
thereof; to amend chapter 425 of the laws of 2002, amending the educa-
tion law relating to the provision of supplemental educational
services, attendance at a safe public school and the suspension of
pupils who bring a firearm to or possess a firearm at a school, in
relation to the effectiveness thereof; to amend chapter 101 of the
laws of 2003, amending the education law relating to implementation of
the No Child Left Behind Act of 2001, in relation to the effectiveness
thereof; relates to school bus driver training; relates to special
apportionment for salary expenses and public pension accruals; to
amend chapter 121 of the laws of 1996 relating to authorizing the
Roosevelt union free school district to finance deficits by the issu-
ance of serial bonds, in relation to the amounts of such apportion-
ments; in relation to special apportionment for public pension
accruals; relates to authorizing the city school district of the city
of Rochester to purchase certain services; relates to suballocations
of appropriations; relating to the support of public libraries; to
repeal paragraph cc of subdivision 1 of section 3602 of the education
law, relating to the gap elimination adjustment percentage; to repeal
paragraph c of subdivision 17 of section 3602 of the education law,
relating to the gap elimination adjustment; and providing for the
repeal of certain provisions upon expiration thereof (Part A); inten-
tionally omitted (Part B); intentionally omitted (Part C); to amend
part D of chapter 58 of the laws of 2011 amending the education law
relating to capital facilities in support of the state university and
community colleges, procurement and the state university health care
facilities, in relation to the effectiveness thereof (Part D); inten-
tionally omitted (Part E); extending scholarship program eligibility

Case 2:21-cv-02389-DRH-AKT   Document 1-3   Filed 04/30/21   Page 4 of 9 PageID #: 29

for  certain recipients affected by the COVID-19 pandemic (Part F); to
amend the education  law,  in  relation  to  establishing  the  amount
awarded for the excelsior scholarship (Part G); to amend the executive
law,  in  relation to facilities operated and maintained by the office
of children and family  services  and  to  authorize  the  closure  of
certain  facilities  operated by such office (Part H); to amend part N
of chapter 56 of the laws of 2020 amending  the  social  services  law
relating to restructuring financing for residential school placements,
in  relation  to  making  such provisions permanent (Part I); to amend
part G of chapter 57 of the laws of 2013, amending  the  executive  law
and the social services law relating to consolidating the youth devel-
opment  and delinquency prevention program and the special delinquency
prevention program, in relation to making  such  provisions  permanent
(Part  J); to amend part K of chapter 57 of the laws of 2012, amending
the education law, relating to authorizing the  board  of  cooperative
educational  services to enter into contracts with the commissioner of
children and family services to provide certain services,  in relation
to  the  effectiveness  thereof (Part K); to amend the social services
law and the family court act, in  relation  to  compliance  with  the
Federal  Family  First  Prevention Services Act; and providing for the
repeal of certain provisions upon expiration thereof (Part L);  inten-
tionally  omitted (Part M); intentionally omitted (Part N); to utilize
reserves in the mortgage insurance fund for various  housing  purposes
(Part  O); to amend the social services law, in relation to increasing
the standards of monthly need for aged,  blind  and  disabled  persons
living  in  the community (Part P); to amend the state finance law, in
relation to authorizing a tax check-off for gifts to food banks  (Part
Q);  intentionally  omitted  (Part R); intentionally omitted (Part S);
intentionally omitted (Part T); to amend the private  housing  finance
law,  in  relation to exempting certain projects from sales and compen-
sating use taxes (Part U); intentionally  omitted  (Part  V);  inten-
tionally  omitted  (Part  W);  intentionally  omitted (Part X); inten-
tionally omitted (Part Y); to  amend  the  social  services  law,  in
relation to making child care more affordable for low-income families;
and providing for the repeal of such provisions upon expiration there-
of  (Part  Z);  to  amend the labor law and the public service law, in
relation to requirements for certain renewable  energy  systems  (Part
AA);  to  establish a COVID-19 emergency rental assistance program; to
amend the state finance law, in relation to  establishing  a  COVID-19
emergency  rental municipal corporation allocation fund; and providing
for the repeal of such provisions upon expiration thereof (Subpart A);
and to amend the tax law, in  relation  to  establishing  the  utility
COVID-19  debt relief credit (Subpart B) (Part BB); to amend the labor
law, in relation to prohibiting the inclusion of claims for  unemploy-
ment insurance arising from the closure of an employer due to COVID-19
from  being included in such employer's experience rating charges; and
to amend chapter 21 of the laws of 2021, amending the labor law relat-
ing to prohibiting the inclusion of claims for unemployment  insurance
arising  from  the  closure  of an employer due to COVID-19 from being
included in such employer's experience rating charges, in relation  to
the  effectiveness  thereof  (Part CC); to amend the education law, in
relation to tuition assistance program awards; and  to  amend  chapter
260  of  the  laws of 2011 amending the education law and the New York
state urban  development  corporation  act  relating  to  establishing
components of the NY-SUNY 2020 challenge grant program, in relation to
the effectiveness thereof (Part DD); to amend the social services law,

in relation to excluding certain funding from the determination of the
maximum  state aid rate for authorized agencies; and providing for the
repeal of such provisions upon expiration thereof (Part EE); to imple-
ment  section  4  of  Division X of the federal consolidated appropri-
ations act of 2021; and providing for the repeal  of  such  provisions
upon  expiration  thereof  (Part  FF); to amend the education law, in
relation to state appropriations for reimbursement of tuition  credits
(Part  GG);  to  amend the public officers law, in relation to defense
and indemnification of physicians acting on behalf of the state  (Part
HH);  to  amend  the  public health law, in relation to the storage of
sexual offense evidence collection kits (Part II); to amend the social
services law, the education law and the public health law, in relation
to providing supports and services for youth  suffering  from  adverse
childhood  experiences;  and  providing  for  the  repeal  of  certain
provisions of the social services law relating  thereto  (Subpart  A);
intentionally  omitted  (Subpart  B)  (Part JJ); to amend the business
corporation law, the general associations law, the  limited  liability
company  law,  the  not-for-profit corporation law, the partnership law
and the real property law, in relation to  service  of  process  (Part
KK);  to  amend  the executive law, in relation to the community violence
intervention  act  (Part  LL);  to  amend  the  public service law, in
relation to directing the public service commission to  review  broad-
band and fiber optic services within the state (Part MM); to amend the
general  business law, in relation to broadband service for low-income
consumers (Part NN); and to amend the social services law, in relation
to the powers of a social services official to receive and dispose  of
a deed, mortgage or lien (Part OO)

**The People of the State of New York, represented in Senate and Assem-
bly, do enact as follows:**

1    Section 1. This act enacts into law major  components  of  legislation
2  necessary  to  implement  the state education, labor, housing and family
3  assistance budget for the 2021-2022 state fiscal year. Each component is
4  wholly contained within a Part identified as Parts  A  through  OO.  The
5  effective  date  for each particular provision contained within such Part
6  is set forth in the last section of such  Part.  Any  provision  in  any
7  section  contained  within  a  Part, including the effective date of the
8  Part, which makes a reference to a section "of this act", when  used  in
9  connection  with  that particular component, shall be deemed to mean and
10 refer to the corresponding section of the Part in  which  it  is  found.
11 Section  three of this act sets forth the general effective date of this
12 act.

13                                  PART A

14    Section 1. Paragraph e of subdivision 1 of section 211-d of the educa-
15 tion law, as amended by section 1 of part A of chapter 56 of the laws of
16 2020, is amended to read as follows:
17    e. Notwithstanding paragraphs a and b of this  subdivision,  a  school
18 district  that  submitted a contract for excellence for the two thousand
19 eight--two thousand nine school year shall submit a contract for  excel-
20 lence  for  the  two  thousand  nine--two  thousand  ten  school year in
21 conformity with the requirements of subparagraph (vi) of paragraph a  of
22 subdivision  two  of this section unless all schools in the district are

1  map shall include, but not be limited to, the following information for
2  each location:
3    (i) download and upload speeds advertised and experienced;
4    (ii) the consistency and reliability of download and upload speeds
5  including latency;
6    (iii) the types of internet service and technologies available includ-
7  ing but not limited to dial-up, broadband, wireless, fiber, coax, or
8  satellite;
9    (iv) the number of internet service providers available, the price of
10 internet service available; and
11   (v) any other factors the commission may deem relevant.
12   3. The commission shall submit a report of its findings and recommen-
13 dations from the study required in subdivision two of this section, to
14 the governor, the temporary president of the senate and the speaker of
15 the assembly no later than one year after the effective date of this
16 section, and an updated report annually thereafter. Such report shall
17 include, but not be limited to, the following, to the extent such infor-
18 mation is available:
19   (a) the overall number of residences with access to high-speed inter-
20 net identifying which areas are served, unserved and underserved;
21   (b) a regional survey of internet service prices in comparison to
22 county-level median income;
23   (c) any relevant consumer subscription statistics;
24   (d) any other metrics or analyses the commission deems necessary in
25 order to assess the availability, cost, and reliability of internet
26 service in New York state; and
27   (e) the map maintained pursuant to paragraph (e) of subdivision two of
28 this section.
29   4. The commission shall hold at least one public hearing in an upstate
30 region and one in a downstate region within one year of the effective
31 date of this section, to solicit input from the public and other stake-
32 holders including but not limited to internet service providers, tele-
33 communications concerns, labor organizations, public safety organiza-
34 tions, healthcare, education, agricultural and other businesses or
35 organizations.
36   5. To effectuate the purposes of this section, the commission may
37 request and shall receive from any department, division, board, bureau,
38 commission or other agency of the state or any state public authority
39 such assistance, information and data as will enable the commission to
40 carry out its powers and duties under this section. Additionally,
41 internet service providers shall provide any information and data
42 requested by the commission that is related to the study required under
43 this section.
44   § 3.  This  act  shall take effect on the thirtieth day after it shall
45 have become a law.


46                                 PART NN

47   Section 1.   The general business law  is  amended  by  adding  a  new
48 section 399-zzzzz to read as follows:
49   § 399-zzzzz. Broadband service for low-income consumers. 1. For the
50 purposes of this section, the term "broadband service" shall mean a
51 mass-market retail service that provides the capability to transmit data
52 to and receive data from all or substantially all internet endpoints,
53 including any capabilities that are incidental to and enable the opera-
54 tion of the communications service provided by a wireline, fixed wire-

Case 2:21-cv-02389-DRH-AKT   Document 1-3   Filed 04/30/21   Page 7 of 9 PageID #: 32

1  less or satellite service provider, but shall not include dial-up
2  service.
3      2. Every person, business, corporation, or their agents providing or
4  seeking to provide wireline, fixed wireless or satellite broadband
5  service in New York state shall, no later than sixty days after the
6  effective date of this section, offer high speed broadband service to
7  low-income consumers whose household: (a) is eligible for free or
8  reduced-priced lunch through the National School Lunch Program; or (b)
9  is eligible for, or receiving the supplemental nutrition assistance
10 program benefits; or (c) is eligible for, or receiving Medicaid bene-
11 fits; or (d) is eligible for, or enrolled in senior citizen rent
12 increase exemption; or (e) is eligible for, or enrolled in disability
13 rent increase exemption; or (f) is a recipient of an affordability bene-
14 fit from a utility. Such low-income broadband service shall provide a
15 minimum download speed equal to the greater of twenty-five megabits per
16 second download speed or the download speed of the provider's existing
17 low-income broadband service sold to customers in the state subject to
18 exceptions adopted by the Public Service Commission where such download
19 speed is not reasonably practicable.
20     3. Broadband service for low-income consumers, as set forth in this
21 section, shall be provided at a cost of no more than fifteen dollars per
22 month, inclusive of any recurring taxes and fees such as recurring
23 rental fees for service provider equipment required to obtain broadband
24 service and usage fees. Broadband service providers shall allow low-in-
25 come broadband service subscribers to purchase standalone or bundled
26 cable and/or phone services separately. Broadband service providers may,
27 once every five years, and after thirty days' notice to its customers
28 and the department of public service, increase the price of this service
29 by the lesser of the most recent change in the consumer price index or a
30 maximum of two percent per year of the price for such service.
31     4. A broadband service provider who offers a high speed broadband
32 service to eligible low-income customers, as such term is used in subdi-
33 vision two of this section, at a download speed of two hundred megabits
34 per second or greater at a cost of no more than twenty dollars per
35 month, inclusive of any recurring taxes and fees such as recurring
36 rental fees for service provider equipment required to obtain broadband
37 service and usage fees, shall be considered to be in compliance with the
38 requirements of subdivisions two and three of this section. Such provid-
39 ers may, once every two years, and after thirty days' notice to its
40 customers and the department of public service, increase the price of
41 such service by the lesser of the most recent change in the consumer
42 price index or a maximum of two percent per year of the price for such
43 service.
44     5. The requirements of subdivisions two and three of this section
45 shall not apply to any broadband service provider providing service to
46 no more than twenty thousand households, if the public service commis-
47 sion determines that compliance with such requirements would result in
48 unreasonable or unsustainable financial impact on the broadband service
49 provider.
50     6. Any contract or agreement for broadband service targeted to low-in-
51 come consumers provided by an entity described in subdivision two of
52 this section, pursuant to this section or otherwise, shall have the same
53 terms and conditions, other than price and speed set pursuant to this
54 section, as for the regularly priced offerings for similar service
55 provided by such entity.

Case 2:21-cv-02389-DRH-AKT  Document 1-3  Filed 04/30/21  Page 8 of 9 PageID #: 33

1    7. Every person, business, corporation, or their agents providing or
2  seeking to provide broadband service in New York state shall make all
3  commercially reasonable efforts to promote and advertise the availabili-
4  ty of broadband service for low-income consumers including, but not
5  limited to, the prominent display of, and enrollment procedures for,
6  such service on its website and in any written and commercial promo-
7  tional materials developed to inform consumers who may be eligible for
8  service pursuant to this section.
9    8. Every person, business, corporation, or their agents providing or
10  seeking to provide broadband service in New York state shall annually
11  submit to the department of public service, no later than November
12  fifteenth after the effective date of this act, and annually thereafter,
13  a compliance report setting forth: (a) a description of the service
14  offered pursuant to this section; (b) the number of consumers enrolled
15  in such service; (c) a description of the procedures being used to veri-
16  fy the eligibility of customers receiving such service; (d) a
17  description and samples of the advertising or marketing efforts under-
18  taken to advertise or promote such service; (e) a description of all
19  retail rate products, including pricing, offered by such person, busi-
20  ness, corporation, or their agents; (f) a description, including speed
21  and price, of all broadband products offered in the state of New York;
22  (g) a description of the number of customers in arrears for the payment
23  for broadband service, percentage of customers in arrears that qualify
24  for low-income broadband service, the number of households that have had
25  their service terminated as a result of non-payment, the number of
26  customers whose service was terminated for arrears arising from non-pay-
27  ment for services other than broadband service, and the number of house-
28  holds that have their broadband service restored after being delinquent
29  on their payments; and such other information as the department of
30  public service may require.
31    9. The department of public service shall, within two years of the
32  effective date of this section and at least every five years thereafter,
33  undertake a proceeding to determine if the minimum broadband download
34  speed in this section should be increased to the federal communications
35  commission's benchmark broadband download speed, or to another minimum
36  broadband download speed if the federal communications commission has
37  not increased its benchmark by such date. The department of public
38  service shall also: (a) undertake appropriate measures to inform the
39  public about available broadband products, including retail rate product
40  offerings and low-income offerings; and (b) periodically, but no less
41  than once every five years, review eligibility requirements for the
42  low-income service required pursuant to this section, and update such
43  requirements as may be necessary to meet the needs of consumers.
44    10. Whenever there shall be a violation of this section, an applica-
45  tion may be made by the attorney general in the name of the people of
46  the state of New York to a court or justice having jurisdiction by a
47  special proceeding to issue an injunction, and upon notice to the
48  defendant of not less than five days, to enjoin and restrain the contin-
49  uance of such violation; and if it shall appear to the satisfaction of
50  the court or justice that the defendant has, in fact, violated this
51  section, an injunction may be issued by the court or justice, enjoining
52  and restraining any further violations, without requiring proof that any
53  person has, in fact, been injured or damaged thereby. In any such
54  proceeding, the court may make allowances to the attorney general as
55  provided in paragraph six of subdivision (a) of section eighty-three
56  hundred three of the civil practice law and rules, and direct restitu-

1  tion. Whenever the court shall determine that a violation of this
2  section has occurred, the court may impose a civil penalty of not more
3  than one thousand dollars per violation. In connection with any such
4  proposed application, the attorney general is authorized to take proof
5  and make a determination of the relevant facts and to issue subpoenas in
6  accordance with the civil practice law and rules.
7  § 2. This act shall take effect immediately.

8  PART OO

9  Section 1. Section 106 of the social services law, as amended by
10 section 1 of part S of chapter 56 of the laws of 2014, is amended to
11 read as follows:
12 § 106. Powers of social services official to receive and dispose of a
13 deed, mortgage, or lien. 1. A social services official responsible, by
14 or pursuant to any provision of this chapter, for the administration of
15 assistance [or care] granted or applied for [may] shall not accept a
16 deed of real property and/or a mortgage thereon on behalf of the social
17 services district for the assistance [and care] of a person at public
18 expense [but such property shall not be considered as public property
19 and shall remain on the tax rolls and such deed or mortgage shall be
20 subject to redemption as provided in paragraph (a) of subdivision six
21 hereof].
22 2. [A social services official may not assert any claim under any
23 provision of this section to recover] (a) Notwithstanding subdivision
24 one of this section, if, prior to the effective date of the chapter of
25 the laws of two thousand twenty-one that amended this section, a social
26 services official accepted a deed of real property and/or a mortgage on
27 behalf of the social services district for the assistance of a person at
28 public expense, such social services official shall not assert any claim
29 under any provision of this section to recover:
30 (1) payments made as part of Supplemental Nutrition Assistance Program
31 (SNAP), child care services, Emergency Assistance to Adults or the Home
32 Energy Assistance Program (HEAP)[.
33 3. A social services official may not assert any claim under any
34 provision of this section to recover];
35 (2) payments of public assistance if such payments were reimbursed by
36 child support collections[.
37 4. A social services official may not assert any claim under any
38 provision of this section to recover];
39 (3) payments of public assistance unless, before [it has accepted] a
40 deed or mortgage was accepted from an applicant or recipient, [it has]
41 the official first received a signed acknowledgment from the applicant
42 or recipient acknowledging that:
43 [(a)] A. benefits provided as part of Supplemental Nutrition Assist-
44 ance Program (SNAP), child care services, Emergency Assistance to Adults
45 or the Home Energy Assistance Program (HEAP) may not be included as part
46 of the recovery to be made under the mortgage or lien; and
47 [(b)] B. if the applicant or recipient declines to provide the lien or
48 mortgage the children in the household shall remain eligible for public
49 assistance.
50 [5. (a)] (b) Such property shall not be considered public property and
51 shall remain on the tax rolls and such deed or mortgage shall be subject
52 to redemption as provided in subparagraph one of paragraph (d) of this
53 subdivision.